UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━X

DEBORAH LOGERFO,

               Plaintiff,

     -against-

CITY OF NEW YORK and BILL DE BLASIO
in his official capacity as Mayor, City of New
York, *et al.*,

               Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━X

**For Online Publication Only**

**MEMORANDUM & ORDER**
17-cv-00010 (JMA) (AYS)

**FILED**
**CLERK**

5/8/2020 1:59 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

     Disability Rights New York
     25 Chapel Street, Suite 1005
     Brooklyn, NY 11201
     *Attorney for Plaintiff*

     Carolyn Elizabeth Kruk
     NYC Law Department
     100 Church Street
     New York, NY 10007
     *Attorney for City Defendants*

     Ralph J. Reissman
     Nassau County Attorney's Office
     One West Street
     Mineola, NY 11501
     *Attorney for Nassau Defendants*

     Dana L. Kobos
     Suffolk County Attorney's Office
     100 Veterans Memorial Highway
     Hauppauge, NY 11788
     *Attorney for Suffolk Defendants*

**AZRACK, United States District Judge:**

     Deborah Logerfo ("Plaintiff" or "Logerfo") commenced this action in January 2017 for

declaratory and injunctive relief, alleging violations of Title II of the Americans with Disabilities

Act of 1990 ("ADA"), 42 U.S.C. § 12131 et. seq., and Section 504 of the Rehabilitation Act of

1973 ("RA"), 29 U.S.C. § 794.[1]  Specifically, Plaintiff alleges that the City Defendants, Nassau

Defendants, and Suffolk Defendants (together, "Defendants"), in violation of the ADA and RA,

have failed to make 911 services accessible to individuals with hearing loss or speech and

communication disabilities because such individuals in New York City, Nassau County, and

Suffolk County cannot contact 911 via text message.[2]  (See Second Amended Complaint ("SAC"),

ECF No. 19.)

Before the Court are Defendants' motions to dismiss the SAC pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6).  (ECF Nos. 51, 53, 57.)  For the reasons that follow, the Nassau Defendants'

motion is denied in part and granted in part; the Suffolk Defendants' motion is denied without

prejudice to allow the parties to address whether Plaintiff's claims against the Suffolk Defendants

are moot; and the City Defendants' motion is granted.  Plaintiff is ordered to show cause, in writing

by June 8, 2020 why her claims against the Suffolk Defendants should not be dismissed as moot.

The Suffolk Defendants shall file opposition papers by July 8, 2020 and Plaintiff can file a reply

by July 22, 2020.

---

[1] Plaintiff brought this action together with a second plaintiff, Nicholas Dupree, who passed away in February 2017 and was removed as a party when the Second Amended Complaint was filed.  (See ECF Nos. 1, 17, 19.)  Accordingly, the Clerk of the Court is directed to terminate Mr. Dupree as a named plaintiff in this case.

[2]  Plaintiff names the following defendants in the Second Amended Complaint: City of New York and Bill de Blasio in his official capacity as Mayor, City of New York; City of New York Police Department and James P. O Neill in his official capacity as Commissioner, City of New York Police Department (together, the "City Defendants"); County of Nassau, New York and Edward P. Mangano in his official capacity as County Executive, County of Nassau, New York; Nassau County Office of Emergency Management and Craig J. Craft, in his official capacity as Commissioner, Nassau County Office of Emergency Management (together with County of Nassau, the "Nassau Defendants"); County of Suffolk, New York and Steven Bellone in his official capacity as County Executive, County of Suffolk, New York; and Suffolk County Office of Emergency Management and Joseph F. Williams in his official capacity as Commissioner, Suffolk County Office of Emergency Management (together with County of Suffolk, the Suffolk Defendants").

# I. BACKGROUND

## A. Factual Background

Plaintiff is a resident of Suffolk County who has hearing loss and communicates primarily with written notes, emails, text messages, closed captioning, and lipreading. (SAC ¶¶ 8–9.) She is unable to communicate via telephone. (Id. ¶ 10.) Plaintiff alleges that several years ago she encountered a car on fire while traveling in Nassau County on Route 135 North in Plainview, New York. (Id. ¶ 27.) She called 911 but was unable to understand the questions the operator asked and asserts she could not communicate crucial information to the 911 operator because of her disability. (Id. ¶¶ 27–32.) Plaintiff contends that she travels throughout New York City and Long Island and claims she was denied and continues to be denied meaningful access to 911 services in Suffolk County, Nassau County, and New York City because she cannot independently access 911 services in these municipalities. (Id. ¶¶ 10, 33, 37.)

## B. Procedural Background

In June 2017, Defendants filed pre-motion conference letters seeking leave to move to dismiss the SAC. (ECF Nos. 24, 25, 26.) The Court held a pre-motion conference in September 2017, but suspended motion practice pending settlement discussions because New York City and Nassau and Suffolk Counties had begun the process of implementing text-to-911 systems that the parties believed would result in the resolution of this case.[3] (See Minute Entry, Sept. 6, 2017, ECF No. 34.) Over the next several months, the Court held telephone conferences to discuss Defendants' progress, but when settlement discussions had not proved fruitful by March 2018, the Court approved a briefing schedule for the motions to dismiss. (Electronic Scheduling Order, Mar.

---

[3] At this September 2017 conference, the attorney for the City Defendants claimed that text-to-911 services in New York City would be rolled out by January 2018. That estimate proved to be overly optimistic as more than two years have passed since that initially estimated date and New York City has not yet implemented any text-to-911 services.

3

28, 2018.)  The three motions to dismiss were fully briefed in September 2018 and remain pending

before the Court.[4]  (ECF Nos. 51, 53, 57.)

In their reply papers, dated September 4, 2018, the Suffolk County Defendants contended

that text-to-911 had already become fully operational in Suffolk County.[5]  (See Suffolk Cnty.

Defs.' Reply Mem. at 5–9, ECF No. 51-10; Matthew Jones Aff. ¶¶ 5–7, 9, Aug. 23, 2018, ECF

No. 51-9.)  The Court subsequently became aware that Suffolk County issued a press release

announcing the availability of text-to-911 services in November 2018.  Considering this update,

the Court held a further status conference in June 2019.  (Status Conf. Tr., June 19, 2019, ECF No.

62.)  There was confirmation at the conference that Suffolk County had implemented text-to-911

services.  Plaintiff, however, refused to dismiss the case against Suffolk County because Plaintiff's

attorney claimed those who would use the text-to-911 services (i.e., those in independent living

centers) were unaware of its existence.  (Id. 7:10–8:23.)  In addition, the City Defendants and

Nassau Defendants indicated that their timelines for implementation of text-to-911 services had

shifted—New York City now claimed a mid-2020 implementation date and Nassau expressed that

text-to-911 would be running by December 2019 or January 2020.  (See id. 4:18–6:21, 6:23–7:5.)

Accordingly, the Court requested that Plaintiff and the Suffolk Defendants attempt to reach a

resolution regarding how to educate the public about the availability of text-to-911 in Suffolk

County, and directed the parties to provide substantive status reports by October 2019.  (Id. 11:17–

22, 13:16–14:11.)

In their status report, the City Defendants maintained that an interim text-to-911 system is

---

[4]  The Nassau Defendants, in support of their motion to dismiss, projected a "beneficial use target date" for text-to-911 services in Nassau County as the fourth quarter of 2018.  (Aff. in Supp. of Nassau Cnty. Defs.' Mot. ¶ 6, ECF No. 57.)  Like the initial estimates provided by New York City, this has also proved to be unrealistic.

[5]  The Suffolk Defendants' opening papers included an affidavit from the same person, outlining, in detail, the status of text-to-911 services in Suffolk County, which indicated that the implementation of these services was close to completion.  (See Matthew Jones Aff., May 11, 2018, ECF No. 52-1.)

still on schedule to launch in New York City by Summer 2020. (ECF No. 63). The Nassau

Defendants, however, again changed the targeted completion date for services in Nassau County,

this time to late 2020, without including any detail on the steps they are taking to complete the

project. (ECF No. 66.) Furthermore, Plaintiff and the Suffolk Defendants could not come to a

resolution, and Plaintiff now requests that the Court rule on the three pending motions to dismiss.

(See ECF Nos. 64, 65.) Accordingly, the Court rules as follows.

## II. DISCUSSION

### A. Standing in ADA and RA Suits

Article III of the United States Constitution limits federal jurisdiction to actual cases and

controversies. As a result, the question of whether a plaintiff has standing to sue "is the threshold

question in every federal case, determining the power of the court to entertain the suit." Warth v.

Seldin, 422 U.S. 490, 498 (1975). "A district court properly dismisses an action under Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or

constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing

to bring the action." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L., 790

F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir.

2000)).

A motion to dismiss for lack of standing pursuant to Rule 12(b)(1) may be either facial or

fact-based. Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 56 (2d Cir. 2016). "When

confronted with a defendant's facial challenge to standing, i.e., one 'based solely on the allegations

of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden,

for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." Katz

v. Donna Karan Co., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017) (quoting Carter, 822 F.3d at 56.)

However, if defendants proffer evidence beyond the plaintiffs' pleading (i.e., through affidavits or exhibits), "[i]n opposition to such a motion, plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" Id. (alteration in original) (quoting Carter, 822 F.3d at 57).

A plaintiff ultimately bears the burden of demonstrating she has constitutional standing by proving, by a preponderance of the evidence, (1) that she suffered an "injury in fact" that is both (a) concrete and particularized and (b) actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

In ADA and RA cases, "[p]laintiffs seeking injunctive relief must also prove that the identified injury in fact presents a 'real and immediate threat of future injury,' often termed 'a likelihood of future harm.'"[6] Bernstein v. City of New York, 621 F. App'x 56, 57 (2d Cir. 2015) (quoting Shain v. Ellison, 356 F.3d 211, 215–16 (2d Cir. 2004)).  As the Second Circuit has found in related ADA and RA access cases, a plaintiff has standing to seek "injunctive relief, 'where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location.'"  Id. (alteration in original) (applying the

---

[6] As the standards under the RA and ADA "are generally the same and the subtle distinctions between the statutes are not implicated in this case, 'we treat claims under the two statutes identically.'"  Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

standard where a blind individual alleged that he was prevented from gaining equal or reasonable

access to Central Park in violation of the RA and Title II of the ADA) (quoting Kreisler v. Second

Ave. Diner Corp., 731 F.3d 184, 187–88 (2d Cir.2013) (applying the standard in a Title III case to

find that an individual who traveled by wheelchair had standing to challenge both the wheelchair-

inaccessible entrance and the ADA violations inside the diner that related to his disability)).

 Notably, "[i]n ADA cases, a broad view of constitutional standing is appropriate because

private enforcement suits are the primary method of obtaining compliance with the Act." Harty v.

Spring Valley Marketplace LLC, No. 15-CV-8190, 2017 WL 108062, at \*6 (S.D.N.Y. Jan. 9,

2017) (internal quotation marks and citations omitted).

  **B.** **Plaintiff Has Standing to Maintain Claims Against the Nassau Defendants**

 The Nassau Defendants contend that Plaintiff cannot show that she has Article III standing

because she did not suffer an "injury in fact," and has not alleged that she is in danger of a real and

immediate threat of future injury in Nassau County. As outlined below, the Court finds that

Plaintiff has standing to bring ADA and RA claims against the Nassau Defendants for denying her

meaningful access to its 911 services.

 In support of their motion, the Nassau Defendants focus on the case Enos v. Arizona, No.

16-CV-00384, 2017 WL 553039 (D. Ariz. Feb. 10, 2017). Like Logerfo, the individual plaintiffs

in Enos were deaf or hard of hearing and alleged that the failure of the State of Arizona and various

municipalities in Arizona to provide text-to-911 services violated the ADA and RA by denying

the plaintiffs meaningful access to the defendants' emergency services. 2017 WL 553039 at \*1.

The defendants in Enos argued, in a motion to dismiss, that these individual plaintiffs did not have

standing because they suffered no injury in fact and there was no real and immediate threat of

future injury. Id. at \*2. In denying the motion, the district court in Enos highlighted that the

amended complaint alleged that the plaintiffs (1) lived in fear of being away from their homes and

not being able to access 911 services; (2) are either elderly, care for elderly individuals, and/or have medical conditions making it more likely that they would experience medical emergencies and need to contact 911; and (3) included some allegations of past inabilities to communicate with 911 operators.  Id. at *4–5.  The court held that the allegations of past injuries (being unable to communicate with 911 operators), when coupled with the allegations supporting an inference of a likelihood of threat of repetition (plaintiffs' ages and/or medical conditions), supported a finding that the plaintiffs' injuries were sufficiently imminent to confer Article III standing.  Id. at *5.

The Nassau Defendants argue that following this line of reasoning leads to a finding that Plaintiff does not have standing because she has not alleged that she was denied access to 911 services after calling Nassau County 911, nor does the SAC allege that Plaintiff is in danger of actual or imminent repeated injury.  (Nassau Cnty. Defs.'s Mem. at 9–11, ECF No. 57-1.)

Plaintiff, in her opposition, relies on Enos as well as Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg, in which individuals with disabilities sued New York City and its mayor in the aftermath of Hurricane Irene on the basis that the city's emergency and disaster preparedness plans violated the ADA and RA by failing to address the needs of persons with disabilities.  290 F.R.D. 409 (S.D.N.Y. 2012).  The defendants in Brooklyn Ctr. for Indep. of the Disabled argued that the individual plaintiffs did not demonstrate that they were injured during Hurricane Irene in a way that was traceable to the City's emergency planning or procedures, so they had not alleged an "injury in fact."  Id. at 413.  The district court rejected this argument, instead stressing that the individual plaintiffs' ongoing injury was that "they have been, and continue to be, deprived of benefits afforded to other citizens—namely, the benefits of an adequate emergency preparedness program."  Id. at 414.  The court highlighted the severity of the threat of the future harm—that another disaster will inevitably occur and seriously affect the plaintiffs—and that a court would be

in no better position later to resolve the claims, in finding that the plaintiffs had standing to bring the suit. Id. at 415.

Both Brooklyn Ctr. for Indep. of the Disabled and Enos are instructive here. Plaintiff alleges that she suffered a prior injury in Nassau County as a result of the lack of text-to-911 services because she could not communicate with the 911 operator.[7]  (SAC ¶¶ 27–32.)  She also explains that her "injury in fact" is the continuing deprivation of the benefits of 911 services in Nassau County that are available to other citizens.  (SAC ¶¶ 52, 53, 58; Pl.'s Mem., at 4–7, ECF No. 55.)  Clearly, the lack of access to 911 services, like the lack of access to an emergency preparedness program, threatens a particularly severe harm because 911 is meant to be used in emergency circumstances, so being prevented from accessing it can have similar catastrophic consequences.  While Plaintiff is not a resident of Nassau County, her proximity to Nassau County as a resident of a bordering county, coupled with her specific prior injury in Nassau County and the magnitude of the potential future injury, supports a finding that future injury is sufficiently imminent to bring a claim for injunctive relief under the ADA and RA.[8]  Indeed, the Court "would be in no better position later than now to resolve the claims presented" because "to conclude otherwise would be perverse, as it would mean that [Plaintiff] could bring [her] claim only after"

---

[7]  The Nassau Defendants argue that Plaintiff was not actually injured because she was reporting a car fire in which she was not physically harmed, nor does she contend that emergency services were not dispatched to address the issue. (Nassau Cnty. Defs.' Mem. at 8.)  However, Plaintiff's representation that she was unable to communicate with the 911 operator sufficiently alleges a concrete injury suffered by Plaintiff in Nassau County because she was denied the full benefits of its 911 services.

[8]  In their motion papers, the Nassau Defendants include an affidavit from Nassau County Police Lieutenant Israel Santiago which states that Nassau County is in the process of implementing text-to-911 capability with a "projected 'beneficial use' target date [of] the fourth quarter of 2018."  (Aff. in Supp. of Nassau Cnty. Defs.' Mot. ¶ 6.)  This affidavit, while appropriately considered in a fact-based Rule 12(b)(1) motion challenging standing, does not contradict Plaintiff's allegations of ongoing harm (or threat of future harm) because the statements by Lieutenant Santiago are too vague and conclusory to concretely demonstrate that Nassau County's text-to-911 services will be imminently available such that a ruling by this Court will not redress Plaintiff's injury.  Indeed, Nassau County still has not implemented text-to-911 services.  For similar reasons, the Nassau Defendants cannot demonstrate that the claims against them are moot.

suffering an extreme emergency in which she was unable access 911 emergency services. Brooklyn Ctr. for Indep. of the Disabled, 290 F.R.D. at 415.

Furthermore, there is a causal relationship between Plaintiff's alleged injury and Nassau County's lack of text-to-911 services because (1) she claims she was unable to communicate crucial information to the 911 operator to report the car on fire because she could not understand the questions posed; and (2) she alleges that she cannot communicate via telephone with a 911 operator and primarily communicates through, inter alia, text messages.  Thus, if Plaintiff obtains a favorable decision and the Court directs Nassau County to provide text-to-911 services, Plaintiff will be able to access emergency services in Nassau County via text message, remedying her alleged injury.   Accordingly, Plaintiff has sufficiently alleged standing to sue the Nassau Defendants for violations of the ADA and RA

### C.   The Suffolk Defendants' Motion is Denied Without Prejudice

Plaintiff concedes that text-to-911 services now exist in Suffolk County.  The Suffolk Defendants contend this admission moots Plaintiff's claims against them, but Plaintiff is not willing to dismiss the Suffolk Defendants because Plaintiff's counsel, Disability Rights New York, claims that its constituents and contacts at local independent living centers are unaware of the service's availability.[9]  (See Status Conf. Tr., 7:10–8:23; ECF Nos. 64, 65.)  The question of whether Plaintiff had standing to sue the Suffolk Defendants when she commenced her case is a close one.  However, "[a] core element of Article III's case-or-controversy requirement is that the case remains 'alive at all stages of judicial proceedings' because '[i]f events subsequent to the

---

[9] It is not clear to the Court how this concern has any bearing on Plaintiff's claims against the Suffolk Defendants. Disability Rights New York is not a plaintiff in this action, nor was this case filed as a putative class action.  Nothing in the SAC mentions outreach, nor does Plaintiff explain how the press release, which was reported on by various news outlets, such as Newsday and the NY Post, did not sufficiently inform Suffolk County residents of the availability of text-to-911 services.  Plainly, Plaintiff is aware of its availability, as her attorneys acknowledged its existence at the status conference.

filing of a lawsuit resolve the controversy, the case should be dismissed as moot.'"  Delaware Riverkeeper Network v. New York State Dep't of Envtl. Conservation, 788 F. App'x 65, 66 (2d Cir. 2019) (alteration in original) (quoting Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 81 (2d Cir. 1991)).  Thus, mootness is a further threshold jurisdictional question that this Court must address before Plaintiff can continue this suit.  The Court will only address standing if the Court is first satisfied that Plaintiff's claims against the Suffolk Defendants are not moot.

While Plaintiff's claims against the Suffolk Defendants appear to be moot, the parties have not fully addressed the mootness issue.  The Suffolk Defendants only reported that text-to-911 was fully operational in Suffolk County in its reply papers and Plaintiff has not filed any formal response addressing mootness.  Accordingly, the Court denies the Suffolk Defendants' motion to dismiss for lack of standing without prejudice.  Plaintiff is ordered to show cause, in writing by June 8, 2020 why her claims against the Suffolk Defendants should not be dismissed as moot.  The Suffolk Defendants shall file opposition papers by July 8, 2020 and Plaintiff can file a reply by July 22, 2020.

**D.  Plaintiff's Claims Against the City Defendants are Dismissed**

Although it is undoubtedly important that New York City provide text-to-911 access to its emergency services, Plaintiff has failed to demonstrate that she has standing to maintain her ADA and RA claims against the City Defendants.[10]  Plaintiff again contends that it is "the ongoing deprivation of her rights to equal access to the benefit of 911 services" in New York City that demonstrates she has a concrete and particularized injury in fact and likelihood of an imminent

---

[10]  The Court notes that text-to-911 services would not only benefit those with hearing impairments.  There are undoubtedly scenarios in which someone who can ordinarily communicate via telephone may need to access 911 services but be unable to safely make a phone call.  For example, text-to-911 could potentially be lifesaving in certain domestic violence or home robbery situations.  While Plaintiff lacks standing to pursue a suit against the City Defendants, the Court urges New York City to prioritize access to text-to-911 for all New York City residents and visitors.  However, the Court also recognizes the extreme challenges faced by the City Defendants in the current COVID-19 pandemic, which might further delay the planned rollout of its text-to-911 services.

future injury.[11]  (Pl.'s Mem. at 4–5.)  However, Plaintiff does not allege any pertinent connection

to New York City to support her argument—the only link to New York City in the SAC is a single,

conclusory, allegation that Plaintiff "travels throughout New York City and Long Island."  (SAC

¶ 11.)  Plaintiff does not contend that she ever called, attempted to call, or desired to call 911 while

in New York City.

Thus, Plaintiff cannot rely on Enos or Brooklyn Ctr. for Indep. of the Disabled to establish

standing to sue the City Defendants for multiple reasons.  First, Plaintiff's past injury in Nassau

County does not lend any support to a finding that Plaintiff will face a likelihood of future injury

in New York City without text-to-911 services.  See Enos, 2017 WL 553039 at *5.  Critically,

Plaintiff does not reside in New York City and her residence in Suffolk County is not

geographically close enough to establish that she suffers an ongoing injury that is "certainly

impending" and "particularly severe" because she is allegedly unable to access New York City's

911 services. [12]  Brooklyn Center for Independence of the Disabled, 290 F.R.D. at 415.  Moreover,

Plaintiff's failure to allege any connection to New York City's emergency services greatly

undercuts her claim that "there is no better time" to address her access to 911 services in New

York City.  Id.

In sum, the SAC fails to demonstrate that Plaintiff suffered an injury in fact in New York

---

[11]  In addition to arguing that Plaintiff lacks standing for failing to allege an injury in fact, the City Defendants contend that Plaintiff is provided meaningful access to its 911 services through the street emergency alarm boxes maintained by New York City.  (See Mem. in Supp. of City Defs.' Mot., at 9–12, ECF No. 54.)  As the City points out, a permanent injunction in the Southern District of New York enjoins the City from removing the alarm boxes so that those who are deaf or hard of hearing can access its 911 system.  Because the Court finds that Plaintiff does not have standing even without considering the import of the alarm boxes, the Court need not address the City Defendants' argument that the presence of the 911 alarm boxes is fatal to Plaintiff's claims.  Nor is it necessary to address the City Defendants' related argument that collateral estoppel and res judicata preclude Plaintiff's claims because Plaintiff was a presumptive class member in the class action for injunctive relief.  (See id. at 12–14.)

[12]  Notably, the district court in Brooklyn Center for Independence of the Disabled applied a particularly expansive view of standing in finding that the individual plaintiffs could maintain their ADA and RA claims.  Even under this more expansive analysis, Plaintiff has not demonstrated that she has standing to maintain ADA and RA claims against the City Defendants.

City, that she faces real and immediate threat of future injury, or that there is any causal

relationship between the lack of text-to-911 services in New York City and any injury to Plaintiff.

Accordingly, Plaintiff has not established that she has Article III standing to sue the City

Defendants under the ADA or RA and the claims against the City Defendants are dismissed.[13]

### E.    The Claims Against the Nassau County Individual Defendants are Dismissed

Finally, the Court will address the Nassau Defendants' argument that the claims against

the individual defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[14]

Plaintiff asserts that her official capacity claims against the individual defendants named

in the SAC should stand.  (Pl.'s Mem. at 12–13.)  The Nassau Defendants respond that any claims

against the individual defendants in their official capacity are duplicative of claims against the

counties themselves, and thus must be dismissed.[15]   (Nassau Cnty. Defs.' Mem. at 12–13.)

Plaintiff does not respond to the redundancy argument or the cases Defendants cite that dismiss

individual defendants on that basis.  Instead, Plaintiff merely claims that because the individual

defendants are sued in their official capacities and serve as agents of the entities they represent,

they may be sued under the ADA.  (Pl.'s Mem. at 12–13.)  The Court finds that Plaintiff's claims

against the individual defendants in their official capacities are clearly duplicative of the claims

against the defendants the County of Nassau, New York and the Nassau County Office of

---

[13]  For the avoidance of doubt, all of Plaintiff's claims against the City of New York and Bill de Blasio in his official capacity as Mayor, City of New York and City of New York Police Department and James P. O Neill in his official capacity as Commissioner, City of New York Police Department are dismissed for lack of standing.

[14]  The Court does not address the Suffolk Defendants' claims that the Suffolk County entities and individual defendants should be dismissed because, as outlined above, the Court will first determine whether the claims against the Suffolk Defendants are moot.  Accordingly, the entire motion by the Suffolk Defendants is denied without prejudice.  Nonetheless, the same analysis as to the Nassau County individual defendants would apply to the Suffolk County individual defendants.

[15]  Plaintiff only sues the individual defendants in their official capacities and does not argue these defendants are subject to individual liability.  In any event, any individual capacity suit would be fruitless because "it is well-established that there is no individual liability under the ADA or the Rehabilitation Act, whether the individual is sued in their official or individual capacity."  Perros v. Cty. of Nassau, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017).

13

Emergency Management.  See Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 408 (E.D.N.Y.

2010); Scalercio-Isenberg v. Port Auth. of New York, No. 16-CV-8494, 2018 WL 1633767, at *5–

6 (S.D.N.Y. Mar. 31, 2018); Rekowicz ex rel. Congemi v. Sachem Cent. Sch. Dist., No. 11-CV-

1561, 2012 WL 4172732, at *7 (E.D.N.Y. July 2, 2012), report and recommendation adopted in

part, 2012 WL 4172487 (E.D.N.Y. Sept. 17, 2012).  Accordingly, the claims against Edward P.

Mangano in his official capacity as County Executive, County of Nassau, New York and Craig J.

Craft, in his official capacity as Commissioner, Nassau County Office of Emergency Management,

are dismissed as redundant.[16]

### III.  CONCLUSION

For the foregoing reasons, the Nassau Defendants' motion is DENIED in part and

GRANTED in part.  The Clerk of the Court shall dismiss Edward P. Mangano in his official

capacity as County Executive, County of Nassau, New York and Craig J. Craft, in his official

capacity as Commissioner, Nassau County Office of Emergency Management from the suit.

Furthermore, the Suffolk Defendants' motion is DENIED without prejudice to allow the

parties to address whether Plaintiff's claims are moot.  Plaintiff is ordered to show cause, in writing

by June 8, 2020 why her claims against the Suffolk Defendants should not be dismissed as moot.

The Suffolk Defendants shall file opposition papers by July 8, 2020 and Plaintiff can file a reply

by July 22, 2020.

---

[16]  In their Preliminary Statements, the Nassau Defendants assert that "any claims against the Nassau County Office of Emergency Management must be dismissed since [it] is an administrative arm of the County of Nassau with no legal identity separate and apart from Nassau County." (Nassau Cnty. Defs.' Mem. at 2; Nassau Cnty. Defs.' Reply Mem. at 1, ECF No. 57-3.)  However, the Nassau Defendants failed to address this point in the Argument sections of their briefs.  Accordingly, while Plaintiff conceded that the Suffolk County Office of Emergency Management was a non-suable entity, she did not make the same concession with respect to the Nassau County Office of Emergency Management.  Considering the Nassau Defendants' failure to fully articulate their argument for dismissal to allow Plaintiff to respond to that claim, the Court will not dismiss the Nassau County Office of Emergency Management at this time.

Finally, the City Defendants' motion is GRANTED in full and the City Defendants are dismissed from this suit.

**SO ORDERED.**

Dated:  May 8, 2020
        Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
